UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LANNON, an individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a corporation, and DOES 1 through 25, inclusive,<br><br>　　　　　　　　　　Defendant. | Case No.: 16-cv-02617-CAB-BGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 21] |

This matter is before the Court on the motion for summary judgment filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). The motion has been fully briefed, and the Court has deemed the motion suitable for determination without a hearing. After a thorough review of the issues and for the reasons discussed below, the motion is granted.

**I.　Background**

Plaintiff Maria Lannon was an employee for Defendant Wells Fargo from June 2009 until August 2016. [Doc. No. 21-2 at 45, 192.][1] Plaintiff was originally hired by Wells

---

[1] Pinpoint page citations to documents in the record are to the ECF page number at the top of the page.

Fargo in Hawaii, where she worked from June 2009 until February 2011. [*Id.* at 44.] In February 2011, Plaintiff began a period of medical leave precipitated by a flare up of her lung condition pulmonary fibrosis which causes breathing issues. [*Id.* at 44-45.] The leave lasted until July 2012, at which time Plaintiff internally applied for and accepted another mortgage closer position with Wells Fargo in San Diego. [*Id.* at 44, 46.]

In November 2012, while at her position in San Diego, Plaintiff began reporting to her new supervisor Debbie Bolas, a loan administration manager. [*Id.* at 53.] After a promotion in April 2013, Plaintiff had another flare up of her pulmonary fibrosis in August 2013, causing her to take another medical leave which lasted until March 2015. [*Id.* at 50-51.]

Upon returning to work in March 2015, Plaintiff submitted to Wells Fargo an accommodations note from her pulmonologist, Jose Lira, M.D. [*Id.* at 99; Doc. No. 21-3 at 11.] In this note Dr. Lira stated, "I feel that this patient is capable to return to work with some restrictions like lifting less than 10 pounds, supplemental oxygen on a prn basis, allow rest period every 2-3 hours. Patient will be reevaluated in 3 months." [Doc. No. 21-3 at 11.] The note was submitted to accommodations management and Wells Fargo complied with each restriction. [*Id.* at 100-101.] Before Plaintiff returned to work, she also requested a desk change so she could be away from foot traffic in case she needed to use her oxygen. Wells Fargo satisfied this request as well. [*Id.* at 133-140.]

In June 2015, Plaintiff submitted an updated note from Dr. Lira that contained additional work restrictions. [*Id.* at 102; Doc. No. 21-3 at 13.] The additional restrictions were that Plaintiff could work "4 days at a time" and that "she may need to wear comfortable athletic footwear if needed." [Doc. No. 21-3 at 13.] The note did not mention any restriction on the number of hours Plaintiff could work per day. [*Id.*]

Plaintiff then spoke with Jan Coddington-Frame, an accommodations consultant for Wells Fargo, about the four day restriction. [Doc. No. 21-2 at 106-107.] When Ms. Frame suggested a four day, ten hour ("4-10") schedule, Plaintiff first suggested she could work nine hours, but then later agreed with Ms. Frame she could work ten. [*Id.*] Plaintiff began

working the 4-10 schedule and the schedule was not discussed again by Plaintiff or Wells Fargo until sometime in January 2016. [*Id.* at 112-113.]

In December 2015, Plaintiff had a meeting with her supervisor Ms. Bolas to discuss Plaintiff's production and what she can do to improve. [*Id.* at 144.] Ms. Bolas produced a memo on what she discussed with Plaintiff. [Doc. No. 21-3 at 48.] In this memo, Ms. Bolas states:

> "We talked about her accommodation that was made July 2015 allowing her to work a 10 hour work day Monday through Thursday as requested by her Doctor which was submitted to the Accommodations Management Consultant, Jan Coddington Frame, that her Accommodation request needed to be evaluated again and that to check with her Doctors and re-submit to Accommodation based on her needs. I would need a re-evaluation or confirmation to keep her on this accommodation of a 10 hour/4 day work week."

[*Id.*] The note also states that after accounting for a 90 day learning curve upon her return from medical leave, Plaintiff had under-performed for her position in each subsequent month. [*Id.*]

In January 2016, Plaintiff spoke with Ms. Bolas about her productivity and how her schedule and overtime hours were resulting in less rest. [Doc. No. 21-2 at 113.] In February 2016, Ms. Frame reached out to Plaintiff to discuss her schedule. [*Id.* at 105; Doc. No. 21-3 at 17.] Ms. Frame advised Plaintiff to contact Liberty Mutual and that if her doctor recommends four eight hour days she could apply for a revised schedule. [Doc. No. 21-2 at 116-117; Doc. No. 21-3 at 17.] Plaintiff stated she looked into the process, but did not obtain the recommendation from her doctor. [Doc. No. 21-2 at 120-121.]

On March 3, 2016, Plaintiff's former counsel wrote to Wells Fargo demanding accommodations that he claimed had been wrongfully denied to Plaintiff. After receiving that letter, Ms. Frame attempted to discuss the accommodations listed in the attorney letter during a telephone call with Plaintiff. Plaintiff, however, refused to continue the

conversation unless her attorney could participate as well. [*Id.* at 126-127.] Wells Fargo was willing to talk to Plaintiff directly, but not with her attorney present. [*Id.* at 130.]

At some point in late July or early August 2016, Wells Fargo was scheduled to have an internal audit which worried Plaintiff because she felt that a Wells Fargo performance coach was instructing employees how to falsely answer the questions. [Doc. No. 21-2 at 154-155.] Plaintiff last worked for Wells Fargo in late July 2016. [*Id.* at 64.] Plaintiff claims she did not return to work because of the internal audit, but she did not contact HR or the ethics hotline about her concerns. [*Id.* at 156-157.]

After Plaintiff remained absent from work and did not contact Wells Fargo of her need to be absent, Ms. Bolas sent Plaintiff a letter on August 1, 2016, stating, "Unless we hear from you by 5:00 pm on Friday 8/5/16 . . . we will consider that you have voluntarily terminated your employment with Wells Fargo." [Doc. No. 21-3 at 30.] On August 5, 2016, Plaintiff's attorney sent a letter to Wells Fargo stating, "Ms. Lannon considers herself to be constructively terminated by Wells Fargo as of July 18, 2016." [*Id.* at 33.] On August 9, 2016, Ms. Bolas sent Plaintiff a follow up letter stating, "Because you failed to contact us within the specified time frame, your employment with Wells Fargo will be terminated effective August 9, 2016." [*Id.* at 35.] On October 4, 2016, Plaintiff filed her initial complaint in San Diego Superior Court, Wells Fargo then removed it to this Court on October 21, 2016.

## II. Legal Standards

The familiar summary judgment standard applies here. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### III. Discussion

#### A. Abandoned Claims

Wells Fargo moves for summary judgment on each of the ten claims asserted in the complaint. Plaintiff's opposition brief, however, does not respond to Wells Fargo's arguments for summary judgment on the majority of her claims. "[I]t is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment." *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000) (citing *USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994)). "A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *Id.* "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Liberles v. Cty. of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983).

Here, Plaintiff failed to oppose Wells Fargo's Motion for Summary Judgment on her claims of: disability harassment, negligent supervision, intentional and negligent infliction of emotional distress, failure to investigate and prevent discrimination, negligence, and whistleblower retaliation. Accordingly, the Court deems these claims abandoned and grants summary judgment for Wells Fargo on each of these claims. The remaining claims Plaintiff did oppose are addressed below.

### B. Disability Discrimination and Retaliation

The *McDonnell Douglas* burden-shifting framework applies to discrimination and retaliation claims under the FEHA. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998); *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) ("California applies the *McDonnell Douglas* burden-shifting framework and other federal employment law principles when interpreting the FEHA."); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As the Ninth Circuit has explained:

> The *McDonnell Douglas* analysis imposes on the plaintiff an initial burden of establishing a prima facie case of discrimination. To establish a prima facie case, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination. The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas*, or by more direct evidence of discriminatory intent. The requisite degree of proof necessary to establish a prima facie case for Title VII on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.

*Godwin*, 150 F.3d at 1220 (9th Cir. 1998) (internal quotation marks, brackets, ellipses and citations omitted). "While the plaintiff's prima facie burden is not onerous, [s]he must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000) (internal quotation marks and citations omitted). "Once a prima facie case is shown, a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason." *Lawler v.*

*Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013). If the employer satisfies this burden, "the presumption of discrimination disappears" and the burden shifts back to the plaintiff to prove that the reason offered by the employer is a pretext for a discriminatory or retaliatory motive. *Guz*, 24 Cal. 4th at 356.

To establish a prima facie case for either her disability discrimination or her retaliation claim, Plaintiff must show that she suffered an adverse employment action. *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). An "adverse employment action" must "materially affect[ ] the terms, conditions, or privileges of employment," or "[be] reasonably likely to impair a reasonable employee's job performance or prospects for advancement." *Yanowitz*, 36 Cal. 4th at 1051, 1054-55. "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." *Akers v. Cty. of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002).

Here, Plaintiff argues that being placed on the 4-10 schedule was an adverse employment action. However, Wells Fargo implemented the 4-10 schedule as an accommodation to Plaintiff based on her doctor's note, and Plaintiff did not oppose the schedule when it was initially discussed. [Doc. No. 21-2 at 106-107.] When Plaintiff finally voiced her concerns months later wanting to work fewer hours in a day, Wells Fargo informed Plaintiff to have her doctor submit a letter to that effect. Plaintiff failed to follow the instruction. [*Id.* at 120-121.] The evidence, therefore, does not support Plaintiff's claim that she suffered an adverse employment action, meaning she has not established a prima facie case of disability discrimination or retaliation. Accordingly, Wells Fargo is entitled to summary judgment on both of these claims.[2]

---

[2] Because Plaintiff has failed to establish an element in both of the discrimination and retaliation claims, the *McDonnell Douglas* burden-shifting framework is not analyzed to determine whether Defendant had a legitimate, non-discriminatory reason for the actions in question. *See Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237 (2008) ("[T]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision . . .").

## C. Failure to Provide Reasonable Accommodation

Under the FEHA, it is an unlawful employment practice to fail to provide a disabled employee with reasonable accommodations that enable the employee to perform the essential functions of their job. Cal. Gov't Code § 12940(m). Whether an employer's actions were reasonable is inherently factual and "the employer cannot prevail on summary judgment . . . unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442-43 (2007) (quoting *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000)).

Plaintiff's failure to accommodate claim also centers on the implementation of the 4-10 schedule. Plaintiff argues that because her doctor's letter did not indicate how many hours Plaintiff was capable of working each day that Wells Fargo was required to call the doctor to clarify the situation. Plaintiff does not offer any authority for the proposition that an employer must contact an employee's doctor directly to determine whether he recommended additional restrictions on working conditions that were not stated in the original letter. In any event, it is undisputed that Wells Fargo provided Plaintiff with each accommodation recommended by Plaintiff's doctor. Moreover, when Plaintiff sought additional accommodations not specified in her doctor's letter, Wells Fargo merely asked Plaintiff to provide a new letter from her doctor, and Plaintiff did not do so and refused to discuss the situation with Wells Fargo without her attorney present. [Doc. No. 21-3 at 17.] In other words, the undisputed evidence shows that Wells Fargo did everything in its power to find a reasonable accommodation for Plaintiff, but the informal interactive process broke down because Plaintiff failed to engage in discussions about additional accommodations

in good faith. Accordingly, Wells Fargo is entitled to summary judgment on the failure to provide reasonable accommodation claim.

### D. Failure to Engage in the Interactive Process

Under the FEHA, "[i]t is an unlawful employment practice . . . [f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability." Cal. Gov't Code § 12940(n). "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 984 (2008) (internal quotation marks omitted). "[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey v. Mem'l Hosps. Assn.*, 239 F.3d 1128, 1138 (9th Cir. 2001). An employer is liable under § 12940(n) when they bear the responsibility for a breakdown in the interactive process. *Nadaf-Rahrov*, 166 Cal. App. 4th at 985.

Plaintiff argues that Wells Fargo is responsible for a breakdown in the interactive process because it refused to allow Plaintiff's counsel to participate in discussions about accommodations. There is no dispute, however, that Wells Fargo was prepared to discuss Plaintiff's accommodation needs directly with Plaintiff, including those identified in the letter from her attorney. Plaintiff does not offer any authority for the proposition that an employee is entitled to counsel during the interactive process. Moreover, the plain language of the statute and California authority interpreting it indicate that the "interactive process" requires only good faith communication between the *employer* and the *employee*, not their attorneys. Cal. Gov't Code § 12940(n); *Nadaf-Rahrov*, 166 Cal. App. 4th at 985. If attorneys are required, the interactive process has already broken down. Thus, by

refusing to participate without her counsel, Plaintiff is responsible for the breakdown in the interactive process. Accordingly, Wells Fargo is entitled to summary judgment on the failure to engage in the interactive process claim as well.

## IV. Conclusion

For the foregoing reasons, Wells Fargo's motion for summary judgment [Doc. No. 21] is **GRANTED**. The Clerk of the Court shall enter **JUDGMENT** in favor of Wells Fargo and **CLOSE** the case.

It is **SO ORDERED**.

Dated: August 1, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge